UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROGER LEE FRANKLIN,

    Plaintiff,

v.                                                                                 Case No. 1:18-cv-567
                                                                               Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his application for disability insurance benefits (DIB).

        Plaintiff alleged a disability onset date of November 20, 2012. PageID.216. Plaintiff identified his disabling conditions as a sleeping disorder, degenerative disc disease in the neck, and knee replacements in both knees. PageID.220. Prior to applying for DIB, plaintiff completed high school and had past employment as a plumber's helper, warehouse laborer, and press operator. PageID.43, 221. An Administrative law judge (ALJ) reviewed plaintiff's application *de novo* and entered a written decision denying benefits on August 23, 2017. PageID.34-45.[1] This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] The Court notes that the ALJ's decision was e-filed out of order, with page 2 of the decision being filed first. PageID.34.

1

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.  ALJ's DECISION

Plaintiff's application for disability benefits failed at the fourth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity from his alleged onset date of November 20, 2014, and that he meets the insured status requirements of the Social Security Act through December 31, 2019. PageID.36. At the second

3

step, the ALJ found that plaintiff had severe impairments of cervical degenerative disc disease, idiopathic hypersomnia/atypical narcolepsy, and attention deficit disorder (ADD). *Id.* At the third step, the ALJ found that claimant did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.37.

The ALJ decided at the fourth step that:

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) with the following: He can frequently kneel, crouch, and crawl. He can frequently climb stairs and ramps, but can never climb ladders, ropes and scaffolds. He can never be exposed to unprotected heights and moving machinery parts. He is able to understand and remember simple instructions, make simple work related decisions, and carryout simple instructions.

PageID.38. At this step, the ALJ also found that plaintiff is capable of performing his past relevant work as a plumber's helper. PageID.43. After comparing plaintiff's residual functional capacity (RFC) with the physical and mental demands of his work as a plumber's helper, the ALJ found that plaintiff "is able to perform that work as it was actually performed." PageID.43-44.

Although the ALJ found that plaintiff could perform his past relevant work and was not disabled at the fourth step, he proceeded to the fifth step of the sequential evaluation process, where he found that plaintiff could perform other work in the national economy. PageID.44-45. Specifically, the ALJ found that plaintiff could perform the requirements of unskilled, medium exertion level occupations in the national economy including floor cleaner (45,000 jobs), kitchen helper (80,000 jobs), and building cleaner (90,000 jobs). PageID.44-45. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, at any time from November 20, 2014 (his alleged onset date) through August 23, 2017 (the date of the decision). PageID.45.

4

## III. DISCUSSION

Plaintiff set forth four issues on appeal.[2]

**A. The ALJ committed reversible error when he failed to comply with the Social Security Administration's rules for evaluating medical opinions.**

Plaintiff contends that the ALJ erred by improperly evaluating the opinions of plaintiff's treating physician and a nurse practitioner.

### 1. Robert Gunnell, M.D.

In 2008, six years before his alleged disability onset date, plaintiff was evaluated for sleep disorders. The ALJ summarized this medical history as follows:

> Medical evidence of record establishes cervical degenerative disc disease and idiopathic hypersomnia/atypical narcolepsy. In June 2008 [at age 25], the claimant presented to the Sleep Disorders Center with excessive daytime sleepiness. The claimant's mother reported that the claimant falls asleep all the time and that this has been going on for several years. Physical examination was normal. Kevin Kellogg, M.D., assessed excessive daytime sleepiness without snoring, possible narcolepsy. Testing was ordered (Ex. 1F/12). Results of a polysomnogram test noted an asymptomatic periodic limb movement disorder. A multiple sleep latency test the next day was also abnormal and consistent with moderate daytime sleepiness. Dr. Kellogg indicated that the multiple sleep latency test in conjunction with the polysomnogram was consistent with the diagnosis of idiopathic hypersomnolence. It was recommended that the claimant start on Provigil (Ex. 1F/1, 3). He was later treated with Ritalin, which provided moderate relief. A pertinent negative included anxiety (Ex. 3F/1).

PageID.39.

In treating plaintiff after that date, Dr. Gunnell noted that plaintiff gave a history of a persistent sleep problem. The doctor diagnosed plaintiff with ADD. PageID.343-344. Dr. Gunnell offered opinions of plaintiff's condition commencing in 2013. Plaintiff contends that the ALJ improperly evaluated those opinions.

---

[2] The Court notes that the argument portion of plaintiff's brief is a five-page narrative which combines aspects of a number of arguments. PageID.857-861.

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §404,1527(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

The ALJ addressed Dr. Gunnell's opinions as follows:

> On December 11, 2013, Dr. Gunnell restricted the claimant to be off work until December 16, 2013, due to a motor vehicle accident and low back pain strain sprain [sic] (Ex. 3F/5). I accord little weight to this opinion, as no functional limitations were provided and it was for a short period of time.

PageID.43.

> In October 2015, Dr. Gunnel [sic] opined that it appeared the claimant would not be safe at any job sedentary or active. He is unable to safely work at any job because he falls asleep. He cannot drive, due to two car crashes and his history of falling asleep. No employment seen for him (Ex.5F/1-2). I accord little weight to this opinion, as it appears to be based on the claimant's subjective complaints of falling asleep at work, behind the wheel of his car, and on the telephone. Although physical exams note some pain with range of motion of the neck and some musculoskeletal tenderness, they generally note he is alert and oriented with no cranial nerve deficit. Coordination is normal (Ex. 5F/1-2, 8F/20).

PageID.42.

> In October 2015, Dr. Gunnel [sic] assessed the claimant was narcolepsy not controlled with stimulants and disc disease of the neck. The claimant was to continue Ultram and Naprosyn (Ex. 5F/ l-2, 8F/12-13). In May 2016, the claimant presented to the sleep disorders center. Mary M. Barr, ANP, assessed the claimant with excessive sleepiness. An overnight polysomnography followed by multiple sleep latency testing was ordered (Ex. 7F/18-22). During a July 2016 follow-up visit, Ms. Barr indicated that the results of testing was similar to that of 2008. His overnight polysomnogram was *essentially normal* with multiple sleep latency test revealing a mean sleep latency between 5 and 6 minutes with no sleep onset REM episodes. It was noted that the claimant had a history previously of a trial of Provigil, which failed to promote any wakefulness at all, and a trial of Ritalin. Due to undesirable side effects, he did not feel good on the medication and stopped taking it. Ms. Barr stated that any job of any type that required concentration, focus, and attention would result in poor performance on the job secondary to his persistent sleepiness. Medication was not an option for the claimant, who had undesirable side effects from stimulant therapy. The claimant was assessed with idiopathic hypersomnia with long sleep time/atypical narcolepsy (Ex. 6F/2-5, 7F/47-49). A couple months later, the claimant reported neck pain. There was no report of any sleep problem. Physical exam noted pain with neck motion. X-rays of the cervical spine demonstrated mild narrowing at C5-C6 without fracture or spondylolisthesis. There was bony encroachment upon the left C5-C7 and the right C6-C7 neural exit foramina. Motrin was prescribed (Ex. 8F/18-20).

PageID.40 (emphasis in original).

> [I]n April 2017, Dr. Gunnel [sic] opined that the claimant will never be able to drive as he has had two accidents when he fell asleep at the wheel. He is unemployable due to narcolepsy (Ex. 9F/1). I accord little weight to this opinion as it is based upon the claimant's subjective complaints. There is no evidence in the record that the claimant fell asleep in a December 2013 motor vehicle accident (Ex. 2F/5).

PageID.42.

Based on this record, the Court concludes that the issue of plaintiff's narcolepsy should be further developed. Dr. Gunnell's April 2017, which is actually a "to whom it may concern letter" dated April 12, 2017, stated as follows:

> Roger is currently a patient at Grant Medical Center. After he had several sleep studies completed he was diagnosed with A Typical [sic] Narcolepsy. He did not respond to stimulant therapy. He will never be able to drive as he has had two accidents when he fell asleep at the wheel. In my professional opinion he is unemployable due to the Narcolepsy.

PageID.477. It is well established that the Commissioner, not the doctor, makes the determination as to whether a claimant is unemployable due to a disability. *See* 20 C.F.R. § 404.1527(d)(1) ("[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled"). Nevertheless, after treating plaintiff for about four years, Dr. Gunnell stated that plaintiff had sleep studies, was diagnosed with atypical narcolepsy, and did not respond to stimulant therapy. The doctor found plaintiff's reports of falling asleep "at the wheel" supported by the medical evidence and opined that plaintiff "will never be able to drive." While the ALJ pointed out that plaintiff had "essentially normal" sleep studies, it is unclear as to what work limitations would arise from such studies. For his part, Dr. Gunnell felt that the results of these studies would preclude plaintiff from performing a work-related activity such as driving. Based on this record, the ALJ has not given good reasons for giving Dr. Gunnell's opinions little weight. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42

U.S.C. § 405(g). On remand, the Commissioner should re-evaluate the medical evidence and Dr. Gunnell's opinions with respect to the limitations posed by plaintiff's narcolepsy.

### 2. ANP Barr

ANP Barr expressed opinions relevant to her assessment of the sleep disorder:

> In July 2016, Ms. Barr opined that given the claimant's history of falling asleep driving, falling asleep on the job, and in general, his inability to stay awake throughout the day reliably would indicate that he is not able to maintain adequate wakefulness to sustain meaningful employment. Any job of any type that required concentration, focus and attention would result in poor performance on the job secondary to his persistent sleepiness. Ms. Barr recommended that the claimant not drive or operate any heavy machinery. She also recommended that he use strategies during the daytime hours to maintain wakefulness to pat1icipate in activities of daily living. (This would include frequent napping) (Ex. 6F/2-4). I accord little weight to this opinion, as Ms. Barr does not identify the number of episodes that the claimant has experienced or the duration of each episode. Additionally, the objective diagnostic findings of the polysomnogram were *essentially normal*. Moreover, it appears that the claimant has elected not to treat his sleeping disorder due to unsupported side effects.

PageID.42 (emphasis in original).

As an initial matter, ANP Barr's opinions are not entitled to the deference given to the opinions of a treating physician. "The opinion of a 'non-acceptable medical source' [such as a nurse practitioner] is not entitled to any particular weight or deference— the ALJ has discretion to assign it any weight he feels appropriate based on the evidence of record." *Noto v. Commissioner of Social Security*, 632 Fed. Appx. 243, 248-49 (6th Cir. 2015). Nevertheless, as recognized by Social Security Ruling (SSR) 06-03p, while nurse practitioners are not "acceptable medical sources," their opinions "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-03p, 2006 WL 2329939 at *3 (Aug. 9, 2006. Here, ANP Barr helped to evaluate plaintiff at the sleep disorders center under the supervision of Dr. Nancy Bender Hausman and was the medical provider who signed off on plaintiff's 2016 assessment. PageID.385-388. On remand, the

Commissioner should review ANP Barr's opinions and treatment notes as part of the medical record when re-evaluating the limitations posed by plaintiff's narcolepsy.

### B. The ALJ's RFC determination is not supported by substantial evidence.

Plaintiff contends that the RFC determination is flawed because it fails to take into account plaintiff's hypersomnia and narcolepsy. RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). As discussed, plaintiff's RFC did not include any limitations with respect to plaintiff's narcolepsy as discussed by Dr. Gunnell and ANP Barr. On remand, if the re-evaluation of the medical evidence warrants it, the Commissioner should re-evaluate plaintiff's RFC accordingly.

### IV. CONCLUSION

Accordingly, the Commissioner's decision will be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate the medical evidence and Dr. Gunnell's opinions with respect to the limitations posed by plaintiff's narcolepsy. As part of the re-evaluation, the Commissioner should review ANP Barr's opinions and treatment notes. Finally, if the re-evaluation of the medical evidence warrants it, the Commissioner should re-evaluate plaintiff's RFC accordingly. A judgment consistent with this opinion will be issued forthwith.

Dated: September 23, 2019 /s/ Ray Kent
United States Magistrate Judge